IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TONYA BARNHART                  *
                                *
       v.                       *    Civil No. JFM-06-318
                                *
PAISANO PUBLICATIONS, LLC       *
                             *****

MEMORANDUM

This action arises from the publication of a photograph of the Plaintiff, Tonya Barnhart, in the March 2005 issue of *Easyriders*, a magazine published by Defendant Paisano Publications. Ms. Barnhart appears partially nude in the photograph. As a result of its publication, she asserts several claims for invasion of privacy against the Defendant. Paisano Publications has filed a motion for summary judgment. For the following reasons, the motion will be granted.

I.

The undisputed facts are as follows. Tonya Barnhart is a 29 year-old woman employed as a retail clerk; she is not a celebrity, and she has never been paid to perform or to make any other public appearance. On August 28, 2004, Ms. Barnhart attended the Toop's Troops Second Annual Pig Roast.[1] The Pig Roast was a fund-raising event attended by motorcycle enthusiasts, and included music, food, games, and vendors selling motorcycling paraphernalia. At least 200 people were present. The party was "bring your own" alcohol, and continued all day and into the early hours of the next morning. At some point during the day women began removing their shirts in return for being given beads. Ms. Barnhart, swept up by the Mardi Gras type

---

[1] The record is unclear as to whether the name of the organization is "Toop's Troops" or "Tube's Troops." "Toop's Troops" is the name used in the Declaration of a member of the organization. (Dec. of Ralph Stambaugh 1).

atmosphere, was hoisted onto the shoulders of two men and voluntarily lifted up her shirt. At that moment, Bill Cromwell, a photographer who often submitted his pictures to *Easyriders* magazine for publication, snapped a photograph of Ms. Barnhart in her exposed state. He later submitted that picture to *Easyriders*, and it was published in the magazine's March 2005 edition.

## II.

### A.

Motions for summary judgment should be granted when the record establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). The substantive law of the cause of action determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of other factual disputes between the litigants does not defeat an otherwise proper motion for summary judgment if none of the material facts are in dispute. *Id*. A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the non-moving party. *Id*. at 255.

### B.

This is a diversity action, and Maryland's choice of law provisions apply. "In tort actions, Maryland applies the doctrine of lex loci delicti, which provides that the substantive law of the state where the wrong occurs governs." *Rockstroh v. A.H. Robins Co.*, 602 F. Supp. 1259, 1262 (D.Md. 1985). In this case, the event at which plaintiff was photographed was held in Maryland,

and plaintiff and defendant both assume that Maryland law applies. The fact that *Easyrider* magazine is distributed nationally does not provide a basis for overturning this assumption, and I will apply Maryland law.

The Restatement of Torts defines four different types of the tort of invasion of privacy: 1) unreasonable intrusion upon the seclusion of another, 2) unreasonable publicity given to another's private life, 3) publicity that unreasonably places another in a false light before the public, and 4) appropriation of another's name or likeness. Under Maryland law a plaintiff may assert a claim for any of these types of invasion of privacy, see *Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 450-51 (Md. 2001), and Maryland cases look to the definitions and comments contained in the Restatement in applying invasion of privacy law. *See Hollander v. Lubow*, 351 A.2d 421, 424-26 (Md. 1976); *see also Bagwell v. Peninsula Regional Medical Center*, 665 A.2d 297, 318-19 (Md. Ct. Spec. App. 1995).

### III.

An intrusion upon seclusion claim requires that the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff. *Hollander*, 351 A.2d at 424 (citing W. Prosser, *The Law of Torts*, 808 (4th ed. 1971)); Restatement Second of Torts §652B (1977). Likewise, an unreasonable publicity claim requires that the matter that is publicized is private in nature. In that regard the Maryland Court of Appeals has ruled that "anything visible in a public place can be recorded and given circulation by means of a photograph, to the same extent as by a written description, since this amounts to nothing more than giving publicity to what is already public and what anyone would be free to see." *Hollander at 426* (*quoting* W. Prosser, *The Law of Torts*, 810 (4th ed. 1971). The court went on to say that "facts disclosed to

the public must be private facts, and not public ones.  Certainly no one can complain when publicity is given to information about him which he himself leaves open to the public eye." *Id.* at 427 (*quoting* Prosser, *Privacy*, 48 Cal. L. Rev. 383 (1960)).

Here, plaintiff's lifting up of her shirt cannot reasonably be said to have constituted a private act.  She exposed herself at an outdoor fund-raising event open to any member of the public who purchased a ticket.  According to plaintiff's own estimate, about 200 people were present at the event.  Although she alleges that at the moment she removed her shirt she was in the company of only about 10 people, all of whom she knew and trusted, the fact remains that she exposed herself in a public place where anyone could have seen her.

*Furman v. Sheppard*, 744 A.2d 583 (Md. Ct. Spec. App. 2000), is very much on point.  There, the defendant had trespassed onto the property of a private club and filmed plaintiffs on their yacht without their consent.  The court held that plaintiff's intrusion claim had been properly dismissed because they were seen participating in activities that could have been observed by non-trespassing members of the public as well.  *Id.* at 587.  Likewise, in *Solomon v. National Enquirer*, 1996 W.L. 635384 (D. Md. 1996), the court held that a photograph taken of a woman as she stood inside her house by the window could not give rise to an invasion of privacy because any passerby on the street could have viewed her through the window.  *Furman* and *Solomon* both mandate the entry of summary judgment for defendant on plaintiff's seclusion and unreasonable publicity claims.[2]

---

[2]Plaintiff relies heavily upon *Capdeboscq v. Francis*, 2004 U.S. Dist. LEXIS 3790 E.D. La. 2004), in which the court denied a motion for summary judgment filed by defendants where plaintiff had been photographed lifting their tee shirts and exposing their breasts.  *Capdeboscq*, of course, was decided under Louisiana, not Maryland law.  Moreover, in denying defendants' motion, the court noted that plaintiffs alleged that they had been photographed only after having

IV.

To establish a successful claim for false light invasion of privacy, a plaintiff must prove 1) that the defendant gave "publicity to a matter concerning another that places the other before the public in a false light," 2) that "the false light in which the other person was placed would be highly offensive to a reasonable person," and 3) that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Bagwell v. Peninsula Regional Medical Center*, 106 Md. App. 470, 513-14 (Md. App. 1995). A defendant is entitled to judgment as a matter of law if the facts disseminated regarding the plaintiff are true. *Id*.

In *Furman v. Sheppard, supra*, the Maryland Court of Special Appeals found that because the videotape there at issue recorded the plaintiff's activities accurately, it was not actionable under a false light theory. 744 A.2d 583, 587-88 (Md. Ct. Spec. App. 2000). Similarly, in *Aids Counseling and Testing Centers v. Group W Television*, 903 F.2d 1000 (4th Cir. 1990), the Fourth Circuit held that summary judgment had properly been entered for defendant on a false light claim because any inaccuracies in a television station's reporting were minor and did not cause the story to produce a different effect on the audience than would have been produced had the truth been reported. *Id*. at 1004.

Here, however, plaintiff's claim is not that the published photograph somehow distorts her true appearance, but that the photograph's publication gives the impression that she is the

---

been asked to do so several times and after being told that they would not appear on any "*Girls Gone Wild*" video. In fact, their photographs ultimately appeared on the cover of a video/dvd entitled "*Girls Gone Wild Doggie Style*." Even under those circumstances, the court found that it was "a close call" as to whether defendants' summary judgment motion should be denied.

type of person who consents to having a topless photograph of herself published in *Easyriders* magazine. There does not appear to be a Maryland case directly on point, in which plaintiffs claimed not that the information contained in the picture or article itself was false, but that the publication gave the false impression that the plaintiff consented to the dissemination of the information. Cases in other jurisdictions, however, have addressed the issue.

*Braun v. Flynt*, 726 F.2d 245, 247 (5th Cir. 1984), involved an accurate picture of the plaintiff published in a hard core men's magazine called *Chic*. The picture depicted the plaintiff performing her routine as an entertainer at an amusement park, in which a pig dove into a pool and swam to the plaintiff, who was waiting with a bottle of milk for him. The picture was accompanied by a caption written in a tongue in cheek manner.[3] The court upheld the jury's finding of liability, finding the fact that the plaintiff's picture had been placed without her consent in a "magazine devoted exclusively to sexual exploitation and disparagement of women" was sufficient for the jury to find that she had been placed in a false light. *Id*. at 255.

The same result was reached in *Douglass v. Hustler Magazine*, 769 F.2d 1128 (7th Cir. 1985). There, Robyn Douglass, a model and actress, consented to being portrayed in the nude in *Playboy* magazine. *Id*. at 1131. Her picture, however, was published in *Hustler* magazine instead. *Id*. The court delineated the differences between Hustler and Playboy as shown by the record and found that the evidence was such that a reasonable jury could find that it was degrading for a woman to be portrayed as the type of person who would consent to be published

---

[3]The caption read: "SWINE DIVE – A pig that swims? Why not? This plucky porker performs every day at Aquarena Springs Amusement Park in bustling San Marcos, Texas. Aquarena staff members say the pig was incredibly easy to train. They told him to learn quick, or grow up to be a juicy ham sandwich." *Id*. at 248 n.2.

6

in *Hustler* even if she had consented to be published in *Playboy*. *Id*. at 1137. In addition, the court found that the accompanying text in Hustler could have been understood to insinuate that Ms. Douglass was a lesbian, which she is not. *Id*. at 1135. Thus, although the court reversed a jury verdict in plaintiff's favor on other grounds, it concluded that plaintiff had a viable false light claim.

In *Braun* and *Douglass* the plaintiffs presented voluminous evidence demonstrating in detail the degrading and lewd content of *Chic* and *Hustler*. Plaintiff has presented no such evidence here. Unquestionably, the record discloses that a few of the pictures in *Easyriders* are a bit racy, including bikini-clad women and two women (one of whom is plaintiff) lifting up their shirts. However, the only direct evidence concerning the nature of *Easyriders* is contained in the deposition of Kimberly James Peterson, the editor of the "In The Wind" section of the magazine in which plaintiff's picture was published. According to Peterson, the purpose of that portion of the magazine is to illustrate the "exhilaration" of the motorcycling lifestyle. (Dep. of Kimberly James Peterson 12). Likewise, the caption accompanying plaintiff's photograph says only "Pegging the fun meter." This caption is not itself offensive, and did not imply, as did some of the text in the *Hustler* magazine involved in *Douglass*, that plaintiff is a lesbian.

Most importantly, there is nothing in the record to suggest that *Easyriders* is more sexually explicit than *Playboy*, and in *Douglass* the very premise of the court's holding was that plaintiff's consent to have her photograph appear in *Playboy* did not give rise to a false light claim. It was only because the court found that a consent to be photographed for *Playboy* was qualitatively different from a consent to be photographed for *Hustler* that the court held that plaintiff's false light claim was viable.

7

V.

The final claim asserted by plaintiff is for appropriation of her likeness.  The Restatement of Torts provides that "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C (1977).  The tort is intended to protect against a person using the identity of another to advertise his business or for other commercial purposes.  Thus, an appropriation claim does not arise from incidental uses of a person's identity or likeness. *Id*.  As set forth in the Restatement the value of a person's image is not appropriated

> when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

*Id*.

Applying the rules of the Restatement, in *Lawrence v. The A.S. Abell Company*, *supra*, the Maryland Court of Appeals held that because the plaintiffs picture was taken while they were in a public place at a newsworthy event, an action for appropriation could not lie. 475 A.2d at 453. Furthermore, the court stated that even if the use of the plaintiffs' photograph in an advertising campaign was not merely "incidental," a person's likeness must also have some commercial or other value before an action for appropriation can succeed. *Id.*  Because the plaintiffs in *Lawrence* were neither famous nor professional models, they could not show that the

newspaper had taken advantage of any special value associated with their pictures. *Id.*

*Lawrence* is controlling here.  The record does not establish that plaintiff is famous or a professional model or that there is any special value associated with her likeness.  Moreover, as in *Lawrence*, plaintiff's photograph was taken at a public, outdoor event.  Accordingly, her appropriation claim fails as a matter of law.[4]

A separate order effecting the rulings made in this memorandum is being entered herewith.


Date:   October 18, 2006                                         /s/
                                                                 J. Frederick Motz
                                                                 United States District Judge

---

[4] In her opposition papers, plaintiff argues that she did not consent to the publication of her photograph.  That is immaterial.  The issue of whether a plaintiff consented is relevant only in determining whether a defendant has a defense to the plaintiff's invasion of privacy claim. *See Bagwell v. Peninsula Regional Medical Center*, 665 A.2d 297, 319 (Md. 1995).  Here, for the reasons I have stated, plaintiff cannot meet the threshold requirements for any invasion of privacy claim.